## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXIS FRANZWA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP,<br><br>    Defendant. | **Case No.:**<br><br>**COMPLAINT – CLASS ACTION**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Alexis Franzwa ("Plaintiff"), on behalf of all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint against Fried, Frank, Harris, Shriver, & Jacobson LLP ("Defendant"). Plaintiff alleges the following upon information and belief based on and the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## INTRODUCTION

1.      Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted Defendant with sensitive Personally Identifiable Information ("PII"[1] or "Private Information") that was impacted in a data breach (the "Data Breach" or the "Breach").

2.      Plaintiff's claims arise from Defendant's failure to properly secure and safeguard Private Information that was entrusted to it, and its accompanying responsibility to store and transfer that information.

3.      Defendant is an international law firm that provides a wide range of legal services

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

with a particular focus on the business and financial sectors.[2]

4.      Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on its affirmative representations to Plaintiff and Class Members, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

5.      On January 30, 2026, Defendant notified Plaintiff about the Data Breach involving unauthorized access to sensitive Private Information contained on its IT Network.[3]

6.      Upon information and belief, the Data Breach occurred during a cyberattack in October 2025.[4] Once detected, Defendant launched an investigation to determine the nature and scope of the Data Breach.[5]

7.      Upon information and belief, the Data Breach compromised the following types of Private Information belonging to Plaintiff and Class Members: name and Social Security number.[6]

8.      Defendant failed to take precautions designed to keep individuals' Private Information secure.

9.      Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information collected safe and secure from unauthorized access. Defendant solicited, collected, used, and derived a benefit from the Private Information, yet breached its duty by failing to implement or maintain adequate security practices.

10.     Defendant admits that information in its system was accessed by unauthorized individuals, though it provided little information regarding how the Data Breach occurred.

---

[2] https://www.friedfrank.com/about/our-firm (last visited Feb. 14, 2026).
[3] Plaintiff's Notice Letter, attached as ***Exhibit A***.
[4] *Id.*
[5] *Id.*
[6] *Id.*

11.    The sensitive nature of the data exposed through the Data Breach signifies that Plaintiff and Class Members have suffered irreparable harm. Plaintiff and Class Members have lost the ability to control their private information and are subject to an increased risk of identity theft.

12.    Defendant failed to use reasonable security procedures and practice appropriate to the nature of the sensitive, unencrypted information it maintained for Plaintiff and Class Members, causing the exposure of Plaintiff's and Class Members' Private Information.

13.    As a result of Defendant's inadequate digital security and notice process, Plaintiff's and Class Members' Private Information was exposed to criminals. Plaintiff and the Class Members have suffered and will continue to suffer injuries including: financial losses caused by misuse of their Private Information; the loss or diminished value of their Private Information as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

14.    Plaintiff brings this action on behalf of all persons whose Private Information as compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected Private Information using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach. Defendant's conduct amounts to at least negligence and violates federal and state statutes.

15.    Plaintiff brings this action individually and on behalf of a Nationwide Class of similarly situated individuals against Defendant for: negligence; negligence *per se*; and unjust enrichment.

16.     Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of herself, and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## PARTIES

17.     Plaintiff is a citizen and resident of Palatine, Illinois.

18.     Defendant is limited liability partnership maintaining its principal place of business at One New York Plaza, New York, NY 10004.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is more than 100 and at least one member of the Class defined below is a citizen of a different state that is diverse from Defendant's citizenship, including Plaintiff. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A). Defendant has its principal place of business located in this District.

20.     This Court has personal jurisdiction over Defendant because Defendant is registered to do business and maintains its principal place of business in this District.

21.     Venue is proper in this Court because Defendant's principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Background on Defendant

22.     Defendant is an international law firm that provides a wide range of legal services

with a particular focus on the business and financial sectors.

23.    Upon information and belief, Defendant made promises and representations to individuals', including Plaintiff and Class Members, that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained.

24.    Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

25.    As a result of collecting and storing the Private Information of Plaintiff and Class Members for its own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff's and the Class Members' Private Information from disclosure to third parties.

**B.  The Data Breach**

26.    On January 30, 2026, Defendant notified Plaintiff of the Data Breach involving unauthorized access to sensitive Private Information contained on its IT Network.[7]

27.    Upon information and belief, the Data Breach occurred during a cyberattack in October 2025.[8] Once detected, Defendant launched an investigation to determine the nature and scope of the Data Breach.[9]

28.    Upon information and belief, the Data Breach compromised the following types of Private Information belonging to Plaintiff and Class Members: name and Social Security number.

29.    While Defendant sought to minimize the damage caused by the Data Breach, it

---

[7] Ex. A.
[8] *Id.*
[9] *Id.*

cannot and has not denied that there was unauthorized access to the sensitive Private Information of Plaintiff and Class Members.

30.     Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

**C. Defendant's Failure to Prevent, Identify, and Timely Report the Data Breach**

31.     Defendant admits that an unauthorized third party accessed IT Network. Defendant failed to take adequate measures to protect its computer systems against unauthorized access.

32.     The Private Information that Defendant allowed to be exposed in the Data Breach is the type of private information that Defendant knew or should have known would be the target of cyberattacks.

33.     Despite its own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[10] Defendant failed to disclose that its systems and security practices were inadequate to reasonably safeguard individuals' Private Information.

34.     The FTC directs businesses to use an intrusion detection system to expose a breach as so as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[11] Immediate notification of a Data Breach is critical so that those impacted can take measures to protect themselves.

35.     Here, Defendant waited months after being made aware of the Data Breach to notify impacted individuals.

**D. The Harm Caused by the Data Breach Now and Going Forward**

---

[10] *Protecting Personal Information: A Guide for Business,* FED. TRADE COMM'N (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business. (last visited Feb. 14, 2026).
[11] *Id.*

36.     Victims of data breaches are susceptible to becoming victims of identity theft. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201(9). When "identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[12]

37.     The type of data that may have been accessed and compromised here can be used to perpetrate fraud and identity theft.

38.     Plaintiff and Class Members face a substantial risk of identity theft given that their Private Information was compromised in the Data Breach.

39.     Stolen Private Information is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity.

40.     When malicious actors infiltrate companies and copy and exfiltrate the Private Information that those companies store, the stolen information often ends up on the dark web where malicious actors buy and sell that information for profit.[13]

41.     For example, when the U.S. Department of Justice announced their seizure of AlphaBay—the largest online "dark market"—in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another

---

[12] *Prevention and Preparedness*, New York State Police, https://troopers.ny.gov/prevention-and-preparedness  (last visited Feb. 14, 2026).
[13] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE (Dec. 28, 2020) https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring (last    visited Feb. 14, 2026).

person's identity."[14] Marketplaces similar to the now-defunct AlphaBay continue to be "awash with [PII] belonging to victims from countries all over the world."[15]

42.     PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[16] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[17]

43.     According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[18]

44.     Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[19] Defendant did not rapidly report to Plaintiff and Class Members that their Private Information had been stolen. Defendant notified impacted people months after learning of the Data Breach.

45.     As a result of the Data Breach, the Private Information of Plaintiff and Class Members has been exposed to criminals for misuse. The injuries suffered by Plaintiff and Class

---

[14] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR (April 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/ (last visited Feb. 14, 2026).
[15] *Id.*
[16] *Id.*
[17] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015) https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited Feb. 14, 2026).
[18] *2019 Internet Crime Report Released*, FBI (Feb. 11, 2020) https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:~:text=IC3%20received%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion (last visited Feb. 14, 2026).
[19] *Id.*

Members, or likely to be suffered as a direct result of Defendant's Data Breach, include: (a) theft of their Private Information; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this Breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their Private Information against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their Private Information, which remains in the possession of Defendant, and which is subject to further injurious breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

46.    In addition to a remedy for economic harm, Plaintiff and Class Members maintain an interest in ensuring that their Private Information is secure, remains secure, and is not subject to further misappropriation and theft.

47.    Defendant disregarded the rights of Plaintiff and Class Members by (a) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (b) failing to disclose that it did not have adequately robust security protocols and training practices in place to safeguard Plaintiff's and Class Members' Private Information; (c) failing to take standard and reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of

the Data Breach for an unreasonable duration of time; and (e) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

48.     The actual and adverse effects to Plaintiff and Class Members, including the imminent, immediate, and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly or proximately caused by Defendant's wrongful actions and/or inaction and the resulting Data Breach require Plaintiff and Class Members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiff and other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

**E. Defendant's Data Breach Was Imminently Foreseeable.**

49.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches targeting institutions that collect and store Private Information, like Defendant, preceding the date of the Data Breach.

50.     Data thieves regularly target institutions like Defendant due to the highly sensitive information in their custody. Defendant knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

51.     As a custodian of Private Information II, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class Members, and of the foreseeable consequences if its data security systems were breached,

including the significant costs imposed on Plaintiff and Class Members because of a breach.

52.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

53.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data in its systems, amounting to thousands of individuals detailed Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

54.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

55.     The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

**F.  Value of Personally Identifiable Information**

56.     Identity theft is "a fraud committed or attempted using the identifying information of another person without authority."[20] "Identifying information" is "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[21]

57.     The Private Information of individuals remains of high value to criminals, as

---

[20] 17 C.F.R. § 248.201 (2013).
[21] *Id.*

evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[22]

58.    The information compromised in the Data Breach is even more significant because it includes Social Security numbers, which is extraordinarily sensitive and private and is commonly used to perpetrate identity theft and financial and bank fraud.

59.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information . . . [is] worth more than 10x on the black market."[23]

60.    The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[24]

## G. Defendant Failed to Comply with FTC Guidelines

61.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need

---

[22] Anita George, *Your Personal Data Is for Sale on The Dark Web. Here's How Much It Costs,* DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs.
[23] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.
[24] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the FTCA, 15 U.S.C. § 45. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

62.     In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal consumer information they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

63.     The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

64.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

65.    As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices and failed to audit, monitor, or ensure the integrity of its data security practices, or to appropriately prepare to face a data breach and respond to it in a timely manner. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

66.    Defendant was at all times fully aware of its obligation to protect the PII of consumers under the FTC Act yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

**H. Defendant Failed to Comply with Industry Standards.**

67.    Experts studying cybersecurity routinely identify institutions that store Private Information like Defendant as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

68.    Some industry best practices that should be implemented by institutions dealing with sensitive Private Information, like Defendant, include, but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, implementing reasonable systems to identify malicious activity, implementing reasonable governing policies, and limiting which employees can access sensitive data. As evidenced by the Data Breach and its timeline, Defendant failed to follow some or all these industry best practices.

69.     Other best cybersecurity practices that are standard at large institutions that store Private Information include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points.

70.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

71.     Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

**I.  Common Injuries & Damages**

72.     Because of Defendant's ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class Members has materialized and is imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including: (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain (price premium damages); and (d) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII.

**J.  The Data Breach Increases Victims' Risk of Identity Theft and Fraud.**

73.     Plaintiff and Class Members are at a heightened risk of identity theft for years to come, especially because Defendant's failures resulted in Plaintiff's and Class Members' Private Information falling into the hands of identity thieves.

74.     The unencrypted Private Information of Class Members has already or will end up for sale on the dark web because that is the *modus operandi* of hackers. Indeed, when these criminals do not post the data to the dark web, it is usually at least sold on private Telegram channels to even further identity thieves who purchase the PII for the express purpose of conducting financial fraud and identity theft operations.

75.     Further, the standard operating procedure for cybercriminals is to use some data, like the PHI here, to access "fullz packages" of that person to gain access to the full suite of additional PHI that those cybercriminals have access through other means. Using this technique, identity thieves piece together full pictures of victim's information to perpetrate even more types of attacks.[25]

76.     With "Fullz" packages, cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals.

---

[25] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecuritv.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm.

77.     The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

**K.  Loss of Time to Mitigate Risk of Identity Theft and Fraud**

78.     Because of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm and a Defendant arguing that the individual failed to mitigate damages.

79.     The need to spend time mitigating the risk of harm is especially important in cases like this where Plaintiff's and Class Members' Private Information is affected because such information is commonly used to commit identity theft and financial and bank fraud.

80.     By spending this time, data breach Plaintiff is not manufacturing her own harm but is taking necessary steps at Defendant's direction and because the Data Breach included her Private Information.

81.     Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience because

of the Data Breach, such as contacting credit bureaus to place freezes on their accounts (which then requires a fee to unfreeze); changing passwords and re-securing their own computer networks; and checking their financial accounts and health insurance statements for any indication of fraudulent activity, which may take years to detect.

82.    These efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[26]

83.    These efforts are also consistent with the steps that FTC recommends that data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (and considering an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[27]

**L.  The Future Cost of Credit and Identity Theft Monitoring Is Reasonable and Necessary.**

84.    Based on the value of the information stolen, the data either has or will be sold to cybercriminals whose mission it is to perpetrate identity theft and fraud. Even if the data is not posted online, these data are ordinarily sold and transferred through private Telegram channels wherein thousands of cybercriminals participate in a market for such data so that they can misuse it and earn money from financial fraud and identity theft of data breach victims.

---

[26] *See* U.S. Gov't Office, GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), https://www.gao.gov/new.items/d07737.pdf.
[27] *See* Fed. Trade Comm'n, *Identity Theft.gov*, https://www.identitytheft.gov/Steps.

85.    Such fraud may go undetected for years; consequently, Plaintiff and Class Members are at a present and continuous risk of fraud and identity theft for many years into the future.

86.    The retail cost of credit monitoring and identity theft monitoring can cost $200 or more per year per Class Member. This is a reasonable and necessary cost to monitor and protect Class Members from the risk of identity theft that arose from the Data Breach. This is a future cost for a minimum of seven years that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their PII.

**M. Plaintiff's Experiences**

87.    Upon information and belief, Plaintiff directly or indirectly provided her Private Information to Defendant.

88.    Defendant obtained Plaintiff's Private Information with the reasonable expectation and mutual understanding that Defendant would keep her Private Information secure from unauthorized access.

89.    By soliciting and accepting Plaintiff's Private Information, Defendant agreed to safeguard and protect it from unauthorized access and delete it after a reasonable time.

90.    Defendant was in possession of Plaintiff's Private Information before, during, and after the Data Breach.

91.    Following the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, and reviewing her credit reports.

92.    Plaintiff will be forced to spend additional time reviewing her credit reports and monitoring her accounts for the rest of her life. This is time spent at Defendant's direction, which has been lost forever and cannot be recaptured.

93.     Plaintiff places significant value in the security of her Private Information and does not readily disclose it. Plaintiff would not have allowed Defendant to obtain her Private Information absent a belief that Defendant would employ reasonable and adequate data security measures to ensure that her Private Information would not be compromised.

94.     Plaintiff has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source.

95.     As a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after her Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring her accounts and credit reports for fraudulent activity; (b) loss of privacy due to his Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of her bargain because Defendant did not adequately protect her Private Information; (d) emotional distress because identity thieves now possess her sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been stolen and published on the dark web; (f) diminution in the value of her Private Information, a form of intangible property that Defendant obtained from Plaintiff; and (g) other economic and non-economic harm.

96.     Plaintiff has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. This risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the Private Information stolen in the Data Breach.

97.     Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in the possession of Defendant, is protected, and safeguarded from future data breaches. Absent Court intervention, Plaintiff's Private Information will be

wholly unprotected and at-risk of future data breaches.

## CLASS ALLEGATIONS

98.    Plaintiff brings this class action, individually and on behalf of the following Nationwide Class:

> All persons in the United States whose Private Information were impacted by the Data Breach (the "Class").

99.    Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

100.    Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

101.    This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

102.    <u>Numerosity</u>: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, upon information and belief, Plaintiff estimates that the Class is comprised of thousands of Class Members, if not more. The Class is sufficiently numerous to warrant certification.

103.    <u>Typicality of Claims</u>: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, had her Private Information compromised as a result of the Data Breach. Plaintiff is a member of the Class, and his claims are typical of the claims of the

members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members which was caused by the same misconduct by Defendant.

104.    <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

105.    <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

106.    <u>Predominant Common Questions</u>: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

a.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

b.    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

c.    Whether Defendant's storage of Plaintiff's and Class Member's Private Information was done in a negligent manner;

d.    Whether Defendant had a duty to protect and safeguard Plaintiff's and Class Members' Private Information;

e.    Whether Defendant's conduct was negligent;

f.    Whether Defendant's conduct violated Plaintiff's and Class Members' privacy;

g.  Whether Defendant's conduct violated the statutes as set forth herein;

h.  Whether Defendant took sufficient steps to secure individuals' Private Information;

i.  Whether Defendant was unjustly enriched; and

j.  The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

107.  Information concerning Defendant's policies is available from Defendant's records.

108.  Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

109.  The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

110.  Given that Defendant had not indicated any changes to its conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

111.  Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 110, as though fully set forth herein.

112.  Plaintiff brings this claim individually and on behalf of the Class Members.

113.  Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in

safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

114.    Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' Private Information.

115.    Defendant had, and continues to have, a duty to timely disclose that Plaintiff's and Class Members' Private Information within its possession was compromised and precisely the types of information that were compromised.

116.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected individuals' Private Information.

117.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and Class Members. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a data breach.

118.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

119.    Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information.

120.    The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

      a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Private Information;

      b.  Failing to adequately monitor the security of its networks and systems; and

      c.  Failing to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards.

121.   Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within Defendant's possession.

122.   Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' Private Information.

123.   Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the Private Information within Defendant's possession might have been compromised and precisely the type of information compromised.

124.   Defendant breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the National Institute of Standards and Technology's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiff's and Class Members' Private Information. In violation of the FTC guidelines, *inter alia,* Defendant did not protect the Private Information it keeps; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of its networks' vulnerabilities; and failed to implement policies to correct security issues.

125.   It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would result in injury to Plaintiff and Class

Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

126.    It was foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' Private Information would result in injuries to Plaintiff and Class Members.

127.    Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised.

128.    But for Defendant's negligent conduct and breach of the above-described duties owed to Plaintiff and Class Members, their Private Information would not have been compromised.

129.    As a result of Defendant's failure to timely notify Plaintiff and Class Members that their Private Information had been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

130.    As a result of Defendant's negligence and breach of duties, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiff and Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; and overpayment for the services or products that were received without adequate data security.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Class)**

131.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 110, as though fully set forth herein.

132.    Section 5 of the FTC Act, 15 U.S.C. 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information. Various FTC publications and orders also form the basis of Defendant's duty.

133.    Defendant violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information and by failing to comply with industry standards.

134.    Defendant's conduct was particularly unreasonable given the nature and amount of Private Information obtained and stored and the foreseeable consequences of a data breach on Defendant's systems.

135.    Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

136.    Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

137.    As a result of Defendant's negligence *per se*, Plaintiff and Class Members have been harmed and have suffered damages including, but not limited to: damages arising from identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated

therewith; and time spent monitoring, addressing, and correcting the current and future consequences of the Data Breach.

## COUNT III
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

138.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 110, as though fully set forth herein.

139.    Plaintiff and Class Members conferred a benefit upon Defendant by providing Defendant with their Private Information.

140.    Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff. Defendant also benefited from the receipt of Plaintiff's and Class Members' Private Information.

141.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the Class Members' Private Information because Defendant failed to adequately protect their Private Information. Plaintiff and the proposed Class would not have provided their Private Information to Defendant had they known Defendant would not adequately protect their Private Information.

142.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it because of its misconduct and the Data Breach it caused.

## COUNT IV
## BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Class)

143.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 110, as though fully set forth herein.

144.    Plaintiff and the Class provided and entrusted their Private Information to Defendant. Plaintiff and the Class provided their Private Information to Defendant as part of Defendant's regular business practices.

145.    In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff the Class if their data had been breached and compromised or stolen, in return for the business services provided by Defendant. Implied in these exchanges was a promise by Defendant to ensure that the Private Information of Plaintiff and Class Members in its possession was secure.

146.    Pursuant to these implied contracts, Plaintiff and Class Members provided Defendant with their Private Information. In exchange, Defendant agreed to, among other things, and Plaintiff and the Class understood that Defendant would: (1) provide services to Plaintiff sand Class Members'; (2) take reasonable measures to protect the security and confidentiality of Plaintiff and Class Members' Private Information; and (3) protect Plaintiff and Class Members' Private Information in compliance with federal and state laws and regulations and industry standards.

147.    Implied in these exchanges was a promise by Defendant to ensure the Private Information of Plaintiff and Class Members in its possession was only used to provide the agreed-upon reasons, and that Defendant would take adequate measures to protect Plaintiff and Class Members' Private Information.

148.    A material term of this contract is a covenant by Defendant that it would take reasonable efforts to safeguard that information. Defendant breached this covenant by allowing Plaintiff and Class Members' Private Information to be accessed in the Data Breach.

149.    Indeed, implicit in the agreement between Defendant and Plaintiff and Class Members was the obligation that both parties would maintain information confidentially and securely.

150.    These exchanges constituted an agreement and meeting of the minds between the parties.

151.    When the parties entered into an agreement, mutual assent occurred. Plaintiff and Class Members would not have disclosed their Private Information to Defendant but for the prospect of utilizing Defendant services. Conversely, Defendant presumably would not have taken Plaintiff and Class Members' Private Information if it did not intend to provide Plaintiff and Class Members with its services.

152.    Defendant was therefore required to reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure and use.

153.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied contracts with Defendant and would have instead retained the opportunity to control their Private Information.

154.    Defendant breached the implied contracts with Plaintiff and Class Members by failing to reasonably safeguard and protect Plaintiff and Class Members' Private Information.

155.    Defendant's failure to implement adequate measures to protect the Private Information of Plaintiff and Class Members violated the purpose of the agreement between the parties.

156.    As a proximate and direct result of Defendant's breaches of its implied contracts with Plaintiff and Class Members, Plaintiff and the Class Members suffered damages as described in detail above.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representative of the Class and her counsel as Class Counsel;

(b)    For an order declaring that Defendant's conduct violates the laws referenced herein;

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)    For damages in amounts to be determined by the Court and/or jury;

(e)    For an award of statutory damages or penalties to the extent available;

(f)    For pre-judgment interest on all amounts awarded;

(g)    For an order of restitution and all other forms of monetary relief; and

(h)    Such other and further relief as the Court deems necessary and appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all claims herein so triable.

Dated: February 14, 2026                    Respectfully submitted,

By: */s/ Courtney Maccarone*
Courtney Maccarone, NY Bar No. 5030150
Jeff Ostrow (*pro hac vice* application forthcoming)
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite. 500
Fort Lauderdale, Florida 33301
Telephone: (954) 332-4200
maccarone@kolawyers.com
ostrow@kolawyers.com

*Counsel for Plaintiff and the Putative Class*